**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DIONICIA FUENTES, et al.,

                         **Plaintiffs,**

           **v.**

SUPER BREAD II CORP., et al.

                        **Defendants.**

**Civil Action No. 18-6736 (ES) (CLW)**

**OPINION**

SALAS, DISTRICT JUDGE

Before the Court is Plaintiff Dionicia Fuentes's motion for conditional certification under the Fair Labor Standards Act ("FLSA") and class certification under Federal Rule of Civil Procedure 23.[1] (D.E. No. 67). Having considered the parties' submissions, the Court decides this motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the motion is denied in part and granted in part.

## I.     BACKGROUND

Plaintiffs Dionicia Fuentes, Leonardo Rodriguez, Ezequiel Chiozza, Candido Peralta Rodriguez, Angel Perez, Fernando Facal, Dreilyn Santos, Kelvin Taveras and Christopher Vargas Garcias ("Plaintiffs") commenced this putative collective action under the FLSA and class action

---

[1] At the time the motion was filed, the then-operative pleading was the Second Amended Complaint, in which plaintiffs Dionicia Fuentes, Leonardo Rodriquez, and Ezequiel Chiozza were the named Plaintiffs. (D.E. No. 38 at 1). Subsequent to the filing of the current motion, Plaintiffs filed the Third Amended Complaint, which, *inter alia*, added a corporate Defendant, two individual Defendants, and six additional named Plaintiffs. (*Cf.* D.E. No. 98 ("Third Amended Complaint" or "TAC"), *with* D.E. No. 38). Despite these changes, Fuentes remains the only named plaintiff representing the putative class that is at issue in this motion. (*Cf.* TAC ¶ 24, *with* D.E. No. 38 ¶ 18).

under the New Jersey Wage and Hour Law ("NJWHL") to recover unpaid overtime wages on behalf of themselves and current and former employees of Super Bread II Corp.; Super Cakes Corp. ("Super Cakes"); Roxo3, LLC; Jose Martins; and Caterina Martins ((collectively, "Defendants").  Specifically, Fuentes brings her FLSA and NJWHL claims on behalf of "all persons who worked for Defendants as [p]roduct [a]ssistants preparing, producing and packaging breads and cake products any time after April 13, 2016, to entry of judgment in this case."  (*See id.* ¶¶ 88 & 94).  The other eight Plaintiffs[2] bring their claims on behalf of "all persons who worked for Defendants as a truck driver any time after September 7, 2016, to entry of judgment in this case."  (*Id.* ¶ 95).  Plaintiffs generally allege that Defendants willfully failed to pay them "overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek," which constitutes a violation of the FLSA and the NJWHL.  (*See id.* ¶¶106–07 & 112–13).

Fuentes filed the instant motion for conditional certification under the FLSA and class certification under Federal Rule of Civil Procedure 23.  (*See* D.E. No. 67-7 ("Pl. Mov. Br.")).  Defendants filed an opposition (D.E. No. 99 ("Def. Opp. Br."), to which Fuentes replied (D.E. No. 105 ("Pl. Reply Br.").  Defendants also filed a letter seeking to file a sur-reply (D.E. No. 106), to which Fuentes objected (D.E. No. 107).  Finally, Defendants filed a letter notifying the Court of supplement authority, *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 180 (3d Cir. 2019), which was issued during the pendency of the motion.  (D.E. No. 113).  Fuentes filed a letter responding to Defendants' supplemental authority.  (D.E. No. 114).

---

[2]     The eight Plaintiffs are Leonardo Rodriguez, Ezequiel Chiozza, Candido Peralta Rodriguez, Angel Perez, Fernando Facal, Dreilyn Santos, Kelvin Taveras and Christopher Vargas Garcias.

## II.    DISCUSSION

### A.  The Proposed Class and the Proposed Collective

As a preliminary matter, the Court notes that Fuentes fails to properly define a proposed class or a proposed collective.  In the Third Amended Complaint, Fuentes seeks to bring her FLSA claims on behalf of "all persons who are currently or were formerly employed by Defendants as a Production Assistant of baked goods during the Claims period, April 13, 2015 to present."  (TAC ¶ 88).  A "Production Assistant" is further defined as "a former or current employee of Defendants who was or is a non-exempt laborer paid an hourly rate who worked in some capacity producing baked goods."  (*Id.* ¶ 89).  Fuentes also seeks to bring her state claims on behalf of "all persons who worked for Defendants as Production Assistants preparing, producing and packaging breads and cake products any time after April 13, 2016, to entry of judgment in this case."  (*Id.* ¶ 94). Thus, the proposed collective and the proposed class, as defined in the Third Amended Complaint, are at different in that they reflect different time frames—while the FLSA claims date back to April 13, 2015, the time limitation for the NJWHL claims is a year later on April 13, 2016.  (*Id.* ¶¶ 88 & 94).  This distinction is explained in Fuentes's moving brief, where she states that "[u]nlike the FLSA, which has a three year statute of limitations assuming a willful violation, the NJWHL as a two year statute of limitations."  (Pl. Mov. Br. at 20).

However, Fuentes refers to the proposed collective and the proposed class as the "Production Assistant Class" interchangeably throughout her briefs.  (*See, e.g.*, Pl. Mov. Br. at 1 (stating that "Plaintiffs seek to conditionally certify the Production Assistant Class of Defendants' employees" and that "Plaintiffs also move this Court to certify the Production Assistant Class pursuant to Federal Rule of Civil Procedure 23(b)(3)")).  But "Production Assistant Class" is not defined anywhere in the briefs, (Pl. Mov. Br.; Pl. Reply Br.), the proposed order (D.E. No. 67-6),

or the proposed notice (D.E. No. 67-5 ("Proposed Notice")). "Production Assistant Class" is apparently defined in the Third Amended Complaint as "Plaintiff Fuentes and the Collective and Class of workers as Production Assistants" (TAC ¶ 24), which fails identify the proposed collective and the proposed class with the requisite specificity.

Moreover, Fuentes's Third Amended Complaint and her submissions in support of the motion include various iterations of the proposed collective or the proposed class that are inconsistent. For example, with regard to the FLSA claims, Fuentes apparently seeks to conditionally certify of a collective of:

> All persons who work or worked as Production Assistants for Defendants from April 13, 2015 through the entry of judgment performing tasks including but not limited to mixing ingredients, loading dough in machines, putting flavor on products, cutting bread, packaging bread and operating Defendants' ovens and machines in the process of producing bread and cake products.

(Pl. Mov. Br. at 6; *see also* TAC ¶¶ 88–89). For her NJWHL claims, Fuentes seeks to certify a class of "Production Assistants," who are

> [f]ormer or current employees of Defendants (from April 13, 2016 to present) who were or are non-exempt laborers paid an hourly rate who worked in some capacity producing baked goods. (Defendants have identified these persons as packers, production assistants, machine operators, oven operators, pastry chef helpers and manager assistants).

(Pl. Mov. Br. at 17; *see also* TAC ¶ 94). But Fuentes's proposed notice is addressed to:

> All persons who are or were employed as a "Production Assistant" by Super Bread II, Corp. and/or Super Cakes Corp. in any of its New Jersey locations on or after April 13, 2015, who were paid an hourly rate of pay, and not paid overtime compensation (time and one-half your regular hourly rate) for each hour worked beyond forty (40) in a work week.

(D.E. 67-5 ("Proposed Notice") at 1). Finally, the Proposed Notice also states that:

> The Class consists of all current and former Production Assistants employed by Super Cakes and/or Super Bread who worked over

-4-

> forty (40) hours in a workweek at one of the Super Cakes and/or
> Super Bread locations in New Jersey in at least one workweek from
> April 13, 2015 to the present.

(*Id.* at 2).  Among the various versions of the apparent proposed collective and proposed class definitions, one version requires that class members worked over forty hours per workweek, (*see, e.g.*, *id.*), another version requires that class members worked over forty hours per workweek and were not paid time and one-half for each hour worked beyond forty, (*see, e.g.*, *id.* at 1); and yet other versions do not require that class members worked overtime or were insufficiently compensated at all—all that is required is that they worked in certain positions during the relevant time periods, (*see, e.g.*, Pl. Mov. Br. at 6 & 17; TAC ¶¶ 88–89 & 94).  It is thus unclear to the Court what Fuentes's proposed collective and proposed class definitions are.  In the Rule 23 context, if the class is overly broad and devoid of reasonable specificity, there is significant potential that unfairness will befall the class members bound by the judgment.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  In any event, as will be discussed below, regardless of which definitions the Court adopts, Fuentes fails to satisfy Rule 23's requirements for class certification.

## B.   Evidentiary Disputes

Before going into the merits of the case, the Court must first address the competing proofs the parties presented as to the requirements under Rule 23.  "Rule 23 is not a 'mere pleading standard'; plaintiff must show that the putative class meets the requirements through *evidentiary proof*."  *Harding v. Jacoby & Meyers, LLP*, No. 14-5419, 2017 WL 4922010, at *4 (D.N.J. Oct. 30, 2017) (emphasis in original) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008)).  Specifically, "[t]he party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23."  *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).  The Supreme

Court has been clear that actual, not presumed, conformance with Rule 23 is required. *Gen. Tel. Co. of Sw.*, 457 U.S. at 160. Thus, a court "is obligated to probe behind the pleadings when necessary and conduct a 'rigorous analysis' in order to determine whether Rule 23 certification requirements are satisfied." *Byrd*, 784 F.3d at 163. This means that "a district court must resolve every dispute that is relevant to class certification" after considering all relevant evidence submitted by the parties. *Ferreras*, 946 F.3d at 183; *In re Hydrogen Peroxide*, 552 F.3d at 324.

In support, Fuentes relies on her deposition testimony and declarations from opt-in Plaintiffs Janeth Gamez and Blanca Tobar. (D.E. No. 67-2 ("Fuentes Dep. Tr."); D.E. No. 67-3 ("Gamez Decl.") & D.E. No. 67-4 ("Tobar Decl.")).[3] Specifically, Fuentes alleges that she often worked more than forty hours per week but was not paid one and one-half of the regular hourly rate for the excess hours. (*See, e.g.*, Fuentes Dep. Tr. at 62:8–63:10, 107:8–109:25). Moreover, Fuentes alleges that Defendants have a policy where they will not pay overtime. (*Id.* at 63:25–64:7). Similarly, opt-in plaintiffs Gamez and Tobar state that they "regularly worked more than 40 hours in a week" and were paid at their regular "hourly rate in cash for the additional hours" they worked. (Tobar Decl. ¶¶ 7 & 12; *see also* Gamez Decl. ¶¶ 6 & 11).

In response, Defendants submitted twenty-four declarations from their former and current

---

[3]      Fuentes also submits a declaration of her counsel, Bruce Menken, in support of her motion. (D.E. No. 67-1 ("Menken Declaration" or "Menken Decl.")). In addition to statements regarding exhibits attached to the Menken Declaration in support of the motion, which are permissible and customary for attorney declarations, the Menken Declaration also includes statements regarding (i) the procedural history of the instant action (Menken Mov. Decl.¶¶ 4–8), Menken's understanding regarding the immigration status of the owner of the corporate defendants (*id.* ¶ 9), Menken's understanding of the operation of the corporate defendants (*id.* ¶ 10–12), and communications between opt-in plaintiff Gamez and "an individual affiliated with the Defendants" (*Id.* ¶ 13). Fuentes repeatedly relies on statements in the Menken Declaration in support of her motion. (Pl. Mov. Br. at 2, 3, 6, 9 & 17). To the extent that Menken's statement is not based on his personal knowledge and includes his own opinion, the Court disregards these statements as impermissible. *See, e.g.*, *Maldonado v. Ramirez*, 757 F.2d 48, 50–51 (3d Cir. 1985) (explaining that "affidavit must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein") (internal quotation marks omitted).

employees.[4]  Collectively, these declarants state that they either did not work more than forty hours per week or that, to the extent that they worked overtime, they were paid one and one-half of their regular hourly rates for the additional hours.  Fuentes urges the Court to disregard these "happy camper" declarations and argues that the declarations "merit absolutely no weight."  (Pl. Reply Br. at 1–3).  Specifically, Fuentes relies on her attorney's statements in the Menken Declaration and argues that Defendants discourages their employees from joining the litigation by either directly reaching out to the employees or by threatening them "with calls to ICE."  (*See* Pl. Reply. Br. at 2 n.1; Menken Decl. ¶ 13).  Specifically, Menken stated that, within 24 hours after opt-in Plaintiff Gamez joined the case, "Ms. Gamez received a threatening communication from an individual affiliated with the Defendants who referenced her immigration status."  (Menken Decl. ¶ 13).  As discussed in note 3, Menken fails to indicate how he has personal knowledge of the communications.  In comparison, in her declaration, opt-in plaintiff Gamez who presumably has personal knowledge of the threats, does not mention the "threatening communication" to which Menken refers.  (Menken Decl. ¶ 13.; *see generally* Gamez Decl.).  The Court will therefore disregard Menken's statement pertaining to the alleged threats.

Fuentes also submitted a declaration with her reply brief stating that Defendants threatened anyone who speaks to her.  (D.E. No. 105-3 ¶¶ 7–8) (stating, for example, "Wilson Vasquez told me that . . . he was forced to show his cell phone to Catarina so she could see if he had called or texted me.  Mr. Vasquez was afraid he would lose his job for talking to me, so he deleted all the texts he had received from me and blocked my number" and "Catarina had Juan Quntanilla call

---

[4]       Of the twenty-four declarations, two are in English only, two are in Spanish only, and twenty are in Spanish and English.  The Court disregards the two Spanish declarations that are not translated in English.  (D.E. No. 99-4 at 9–13; D.E. No. 99-5 at 35–40).  The Court also declines to consider the declaration of Miguel Gutierrez, (D.E. No. 99-5 at 16–22) as he failed to sign the English-translated version of his declaration.  *See* L. Civ. R. 7.2(a).

employees to tell them they were not allowed to speak to me.   Catarina threatened to call immigration on anyone who did").   Unlike her counsel, Fuentes is a party to the case and can be deposed, testify, and be subject to cross-examination.   But Fuentes similarly lacks personal knowledge regarding the communication between Defendants and their employees, raising a hearsay concern.   The parties have not provided clear authority as to the use of hearsay at the certification stage, although certain courts in this district have permitted its use.   *See, e.g.*, *In re Front Loading Washing Mach. Class Action Litig.*, No. 08-0051, 2013 WL 3466821, at *10–11 (D.N.J. July 10, 2013) (noting that "the Federal Rules of Evidence are not stringently applied during class certification" and that "[p]laintiffs may rely on challenged documents which may . . . contain hearsay in support of their class certification motion).   Yet, even if the Court considered the hearsay information, the information would not change the Court's final analysis.

While having significant concerns over the alleged threats, the Court does not agree that the declarations submitted by Defendants are entirely incredible.   For one, the declarations are submitted under penalty of perjury with the declarants' understanding that they may be deposed and asked to testify.   (*See generally* D.E. Nos. 99-4, 99-5 & 99-6).   Additionally, while Defendants' "happy camper" declarations may be self-serving, so are the declarations submitted by Fuentes and the opt-in plaintiffs.   As one court recognized, "both sets of declarations are litigation-driven, and drafted and selected to advance a preferred characterization of the facts."   *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1061 (N.D. Cal. 2007).

Furthermore, these declarations bare various indicia of credibility.   Nearly all of the declarations include handwritten revisions.   (*See*, *e.g.*, D.E. No. 99-4 at 2, 15, & 80–81).   One declarant specifically modified the time frame of her lunch break, (D.E. No. 99-4 at 80), while others volunteered information (*see*, *e.g.*, D.E. No. 99-4 at 2).   Many declarations include personal

information, such as the declarants' interactions with Fuentes, (*see*, *e.g.*, D.E. No. 99-4 at 4–5, 42, 64, & 81; D.E. No. 99-5 at 7, 61, & 73; D.E. No. 99-6 at 25–26, 47, & 69), as well as their personal reasons for not wanting to work over forty hours in a week, (*see*, *e.g.*, D.E. No. 99-4 at 66) (stating that "I do not believe that I have worked overtime because I have small children and I do not like to neglect them.")).   Cumulatively, these characteristics suggests that each declaration has input from the individual declarants, which bolsters their credibility.  *Cf. In re Wells Fargo*, 527 F. Supp. 2d at 1060–61 (finding the "similarities and uniformity in the language among the [] declarations" to be "glaring reliability concerns").   In contrast, the two opt-in plaintiffs' declarations only include boilerplate statements.   (*See generally* Gamez Decl. & Tobar Decl.).

However, as discussed in the next section, even if the Court did not consider Defendants' declarations, Fuentes still fails to meet the numerosity requirement under Rule 23.

### C.      Numerosity

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted).   A party proposing class-action certification "bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23."  *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015) (citing *Comcast*, 569 U.S. at 33).   In particular, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)-(b)).   That is, "a proposed class must meet all of the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation."  *Monahan v. City of Wilmington*, 49 F. App'x 383, 384 (3d Cir. 2002)

The text of Rule 23(a)(1) does not specify a numerical minimum that is required for class

certification.  *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016).  The Third Circuit

has stated that "generally if the named plaintiff demonstrates that the potential number of plaintiffs

exceeds 40, the first prong of Rule 23(a) has been met."  *Id.* at 249–50 (quoting *Stewart v.*

*Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).  The Third Circuit has also acknowledged that

there is a general rule that a class of twenty or fewer fails to meet the numerosity requirement.  *Id.*

at 250.  "Mere speculation as to the number of class members—even if such speculation is 'a bet

worth making'—cannot support a finding of numerosity."  *Hayes v. Wal-Mart Stores, Inc.*, 725

F.3d 349, 357 (3d Cir. 2013).

Fuentes alleges, at various points throughout the motion, that the proposed class consists

of "at least 30," "somewhere between 20 and 40," or perhaps "40 or more" Super Cakes

employees.  (Pl. Mov. Br. at 2 & 12–13).  These allegations are problematic for several reasons.

First, when discussing the class size, Fuentes refers to the proposed collective and the proposed

class as if they consist of the same members, when in fact the proposed class includes individuals

who were employed on or after April 13, 2016 and the proposed collective includes employees

from April 13, 2015.  (*See, e.g.*, *id.* at 2 ("The FLSA collective and class plaintiffs consist of at

least 30 similarly situated current and former non-exempt laborers who were involved in producing

bread and cake products for Defendants."); Reply Br. at 4 ("[T]he suggestion that 24 people

constitute the majority of Defendants' current and former employees between 2015 and 2018 is

doubtful")).  Yet the proposed class has a shorter time-frame than the proposed collective,

suggesting that it may encompass less class members.  Second, Fuentes's estimate of class size of

"between 20-40" or "40 or more" was apparently based on "all Production Assistants who worked

for Defendants during the past three and one-half years from April 13, 2016 *to present*."  (Mov.

Br. at 13) (emphasis added).  But Fuentes admitted in her reply brief that "after the onset of

litigation in April 2018, . . . Defendants promptly corrected their illegal pay practices." (Reply Br. at 3). The time period that defines the class, therefore, is presumably shortened from September 16, 2019, when the motion was filed, to around April 2018, when the instant action was commenced and when Defendants allegedly corrected their pay practices. With the relevant time period shortened from three and half years to two years, Fuentes provides no support for her argument that the class has grown since the filing of the action.

Third, and most importantly, Fuentes provides minimal support for asserting any version of the class size. To the extent that Fuentes's proposed class consists of all employees who worked as Production Assistants during the relevant time period regardless of whether they worked overtime, which is the broadest definition among the various proposed class definitions, Fuentes argument regarding Rule 23's numerosity requirement rests on the theory that (i) Fuentes testified that as many as seventeen employees worked with her on her shift; (ii) Defendants staffed their employees on two shifts; and (iii) Defendants have a "substantial turnover" of their employees.[5] (Pl. Mov. Br. at 3 & 12–14; *see also* Reply Br. at 4) (stating, for example, "Defendants employed

---

[5]     In her Reply Brief, Fuentes argues that Defendants admitted "on the record that the proposed class will contain as many as 30 members." (Reply Br. at 4). In support, Fuentes attaches two pages of the transcript of a hearing held before the Honorable Cathy L. Waldor, U.S.M.J., on October 2, 2019, during which defense counsel stated that "we spoke about, the initial conference as a maximum, if they win, we don't believe they will, but, if they do, it's a maximum class of 30, we should be able to resolve that quite quickly." (D.E. No. 105-4 at 24:17–22). Later in the transcript, Judge Waldor and counsel for Defendants had the following exchange:

> THE COURT:     How many drivers are -- are, potentially, in that class, do we
>                have the --
> MR. SIMAO:     Between 150 and 160, Your Honor.
> THE COURT:     So, when you say that the 30 –
> MR. SIMAO:     That's – that's the Production class action.
> THE COURT:     I understand. You said it would be resolved. I don't -- what did
>                you mean by that?
> MR. SIMAO:     There's only 30 potential class and --
> THE COURT:     Right.
> MR. SIMAO:     -- a Production Assistant class action.

(*Id.* at 27:14–25). Even without additional context, counsel's statements reflect that at most, the class will consist of 30 potential members.

Production Assistants to staff two separate shifts and as many as 17 employees worked with Plaintiff Fuentes on her shift").

However, Fuentes's own deposition testimony paints a different picture.  Fuentes testified that, throughout her years of employment with Defendants, she worked on both the morning and the afternoon shifts.  (*See* Fuentes Depo. Tr. at 18:2–20:4).  Contrary to Fuentes's argument that "as many as 17 employees worked with [her] *on her shift*," Fuentes actually testified that "more or less 10 or 12" co-workers "work[ed] in the company" in 2015, not just on her shift.  (*Id.* 35:5–38:6; Pl. Mov. Br. at 13 (emphasis added)).  When she was asked "who were *all the employees* that you were working with or alongside of" in 2016, Fuentes answered: "more or less 17."  (*Id.* 39:1–9) (emphasis added).  This testimony is consistent with the information in the declaration submitted by defendant Catarina Martins, who is a general manager at Super Cakes.  (D.E. No. 99-1 ¶ 1).  Martins states that Super Cakes employs the following personnel in its manufacturing process:  (i) a chef and two assistants to make the doughs and work on wet doughs[6]; (ii) four production assistants and two machine operators to work on the two production lines for dry doughs; (iii) a baker, and (iv) four to nine packers.  (*Id.* ¶¶ 10–15; *see* also Opp. Br. at 4–5.).  Fuentes does not dispute any of these statements.  In fact, Fuentes testified that, when she was working as a packer, she worked with four or five other packers, which is consistent with Martins' statement.  (Fuentes Depo. Tr. at 49:21–25).  Accordingly, at any given time, the total number of employees who worked in Super Cakes' manufacturing process was about fourteen to nineteen, which include employees who worked on both shifts.  As to the turnover rates, Fuentes repeatedly

---

[6]   The Court notes that, according to the definition of "Production Assistant" in the Third Amended Complaint and in the moving brief, the chef does not qualify as a Production Assistant.  (*See* TAC ¶ 89; Pl. Mov. Br. at 17) (stating that Production Assistants include "packers, production assistants, machine operators, oven operators, pastry chef helpers and manager assistants").  Nevertheless, for purposes of this discussion, the Court considers the chef a Production Assistant.

testified that roughly the same people she worked with in 2015 also worked with her in 2016, 2017, and 2018.  (*Id.* 39:1–:12 ("Q: How about in 2016, who were all the employees that you were working with or alongside of in South Plainfield? A: The Same. . . .  Q: And who do you remember in terms of their identities? A: The ones that I already mentioned."); *id.* at 41:14–16 ("Q: And how about the identities of the individuals in 2018, do you remember anyone? A: The same I just mentioned.")).  Fuentes also argues that Defendants "frequently rehire former employees."  (Reply Br. at 3).  The Court is thus not persuaded that Fuentes sufficiently shows by a preponderance of evidence that "at least 30," "somewhere between 20 and 40," or perhaps "40 or more" Super Cakes employees worked as product assistant during the relevant time period, starting on April 13, 2016.  Moreover, to the extent that Fuentes seeks to certify a class that consists of employees who worked overtime and/or were underpaid, the class sizes may actually be smaller, and Fuentes further fails to provide sufficient evidence to support that the narrower definitions meet the numerosity requirement.  Without additional evidence, the various estimates are "mere speculations."  *Hayes*, 725 F.3d 349 at 357.  Even if they are "bet[s] worth making," bets are not sufficient to meet the numerosity requirement.  *Id.*

In light of the poorly defined proposed class and the lack of sufficient evidence regarding the alleged class size, the Court finds that Fuentes has failed to satisfy her burden of affirmatively demonstrating by a preponderance of evidence that the numerosity requirement is met.  *See Byrd*, 784 F.3d at 163.  Because a failure to meet the numerosity requirement is dispositive of Fuentes's motion to certify a class, the Court will not address the other three requirements under Rule 23(a)— namely, commonality, typicality, and adequacy of representation—or the requirement under Rule 23(b).[7]  Fuentes's motion for class certification under Federal Rule of Civil Procedure 23 is denied.

---

[7]      As discussed above, for purposes of this Opinion, the Court assumes that Fuentes seeks to certify a class under her broadest proposed class.  The Court notes that this broad definition, which includes all employees who

**D.      Conditional Certification of the Collective under the FLSA**

Under Section 207 of the FLSA, employers are required to pay overtime to employees who work more than forty hours a week, where such overtime must be paid at a rate "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. The FLSA permits an employee who believes his or her right to overtime compensation has been violated to proceed in a collective action "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This statute enables a group of employees to pool their resources and vindicate their rights at a lower cost. *Asifiri v. West Hudson Sub-Acute Care Ctr., LLC*, No. 11-04039, 2014 WL 294886, at *1 (D.N.J. Jan 24, 2014) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1985)). To become parties to a FLSA collective action, employees must affirmatively opt-in by filing written consents with the court. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242–43 (3d Cir. 2013) (citing 29 U.S.C. § 216(b)).

Partly because of the FLSA's opt-in requirement, "[t]he conditional certification process . . . is not really a certification but instead is a 'district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members.'" *Id.* (quoting *Symcyzk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds sub nom. Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013)). To determine whether a FLSA plaintiff may proceed with a collective action, courts within the Third Circuit "employ a two-step approach: a notice and conditional certification stage, and a final certification or decertification stage." *Asifiri*, 2014 WL 294886, at *2. "When considering the first step of conditional certification, courts apply a 'fairly lenient standard' to determine whether the plaintiff has met the 'modest factual showing' necessary for certification." *Id.* (citing *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536 n.4 (3d

---

worked as Production Assistants during the relevant time period, regardless of whether they worked overtime or whether they were underpaid, may also fail the commonality and typicality requirements.

Cir. 2012)). However, courts in the Third Circuit are split between the standard of proof applicable during the first stage, although they generally agree that both standards set very low hurdles. *Zanes v. Flagship Resort Dev., LLC*, No. 09-3736, 2010 WL 4687814, at *4 (D.N.J. Nov. 9, 2010). One standard—the "substantial allegations" standard—is met when plaintiffs show that they and the potential collective allegedly suffered from a common scheme or policy of their employers. *Id.* Such a showing may be met when plaintiffs have made "detailed allegations in their pleadings, and have supported these allegations with affidavits that successfully engage defendant's affidavits to the contrary." *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988), *aff'd sub nom. Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).

Other courts have required plaintiffs to show a "factual nexus between their situation and the situation of other current and former employees sufficient to determine they are 'similarly situated.'" *Zanes*, 2010 WL 4687814, at *4. Courts in the Third Circuit have increasingly adopted the factual nexus standard, reasoning that the "substantial allegations" standard is inefficient and overbroad. *Kronick v. bebe Stores, Inc.*, No. 07-4514, 2008 WL 4546368, at *2 (D.N.J. Oct. 2, 2008). The "factual nexus" standard is met when plaintiffs provide information about who is in the potential collective and provide a reason for inferring that potential collective members are similarly situated. *Zanes*, 2010 WL 4687814, at *4. Because a plaintiff's burden on a motion for conditional certification "is not to produce evidence that would prove that either [s]he or other employees in fact sustained the claimed FLSA violations" *Clark v. Flik Int'l Corp.*, No. 17-1915, 2018 WL 3930091, at *8 (D.N.J. Aug. 16, 2018), courts at the conditional certification stage routinely permit plaintiffs to submit evidence through declarations that include hearsay. *Ying Yang v. Vill. Super Mkt., Inc.*, No. 18-10486, 2019 WL 1275059, at *2 (D.N.J. Mar. 20, 2019). However, plaintiffs must show more than just "pure speculation of a factual nexus between the manner in

which the employer's alleged policy affected her and the manner in which it affected other employees." *Zavala,* 691 F.3d at 536 n.4 (quoting *Symczyk*, 656 F.3d at 193) (internal quotation marks omitted). Despite the modest "factual nexus" evidentiary standard, "courts have not hesitated to deny conditional certification when evidence is lacking." *Dreyer v. Altchem Envtl. Servs., Inc.*, No. 06-2393, 2007 WL 7186177, at *3 (D.N.J. Sept. 25, 2007).

The Court will apply the factual nexus standard here. *See Kronick*, 2008 WL 4546368, at *2. Further, because of the FLSA's opt-in requirement, which does not bind the collective members until they affirmatively join the collective, the Court will assume for purposes of conditional certification that Fuentes's proposed collective involves collective members (i) who worked over forty hours in a workweek; and (ii) who were paid overtime compensation at less than one and one-half times the regular hourly rate. *Genesis Healthcare Corp.*, 569 U.S. at 75 (stating "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court"). Based on this assumption, the Court finds that Fuentes has made the "modest showing" required for conditional certification.

In support of the motion for conditional certification of the collective, Fuentes relies on excerpts of her deposition transcript, opt-in Plaintiff Gamez's declaration, and opt-in Plaintiff Tobar's declaration, collectively alleging they were undercompensated by Defendants. (*See generally* Fuentes Dep. Tr., Gamez Decl. & Tobar Decl.). Specifically, Fuentes and the opt-in Plaintiffs state that they worked at Super Cakes during the relevant time, that they worked more than 40 hours per week, and that they were not paid any overtime. (Fuentes Dep. Tr. at 62:8–63:10; 107:8–109:25; Gamez Decl. ¶ 11; Tobar Decl. ¶ 12). They further state that they were employed at the same location in similar roles - making or producing bread and cake products.

(Fuentes Dep. Tr. at 17:11-20:10 & 39:1-4; Gamez Decl. ¶ 1–2; Tobar Decl. ¶ 1–2). Fuentes and

the opt-in Plaintiffs seek the same form of relief—compensation at time and one-half for hours

worked in excess of forty hours per week. (TAC ¶ 116(d)). In addition, Fuentes also alleges that

the Production Assistants were similarly underpaid for each hour worked in excess of forty hours

in a workweek. (TAC ¶ 106). Fuentes relies on the following deposition testimony:

> Q. Can you give me the dates of the conversations you had with
> Katerina on this issue?
> A. No, because I don't remember.
> . . .
> Q. What did she say specifically?
> A. Almost – very frequently I would help her to get new employees
> when they were needed, and obviously I had to ask her what was
> the pay because other people would ask me that, so she would
> tell me okay, you can explain to them that we pay 40 hours by
> check and over – the extra hours are in cash and not over – not
> over rate.
> Q. So this conversation would only happen when you were offering
> employees to work at Super Cakes?
> A. Yes.
> . . .
> Q. How about 2016, did you recommend anyone?
> A. I don't remember. I only remember that I recommended Carmen
> and Miguel, but I don't remember exactly what year.
> Q. Are those the only two employees that you recommended to
> Super Cakes other than – since 2015?
> A. That I remember, yeah.
> Q. And did you have two separate conversations with Katerina on
> the issue of payment in regards [sic] to those two people?
> A. Yes.
> Q. What did you tell her?
> A. I asked her if it was the same that she would pay the other people.
> Q. And what did she say?
> A. That – yes, that it was 40 hours by check and the rest was in cash.

(Fuentes Dep. Tr. at 63:19–21, 63:24–64:13, 64:21–65:15) (objections omitted)). Based on these

statements, the Court finds that Fuentes have "produce[d] some evidence, 'beyond pure

speculation,' of a factual nexus between the manner in which the employer's alleged policy

affected her and the manner in which it affected other employees." *Zavala*, 691 F.3d at 536

(quoting *Symczyk*, 656 F.3d at 189).

Defendants attempt to distinguish Fuentes and opt-in Plaintiffs' positions from the potential collective she seeks to conditionally certify by arguing that Defendants' declarants worked different positions at different locations with different schedules and breaks.  (Def. Opp. Br. at 12–13).  Defendants also argue that based on the "declarations from numerous former and current employees (including production assistants)[,] . . . no other employee claims to be subject to the same 'illegal pay practice' as [Fuentes]."  (Def. Opp. Br. at 16).

Courts have found that the inquiry into whether employees are similarly situated "necessarily addresses the merits of plaintiff's claim," making it an inquiry that is reserved for the second stage of a collective action certification.  *See, e.g.*, *Garcia v. Freedom Mortg. Corp.*, No. 09-2668, 2009 WL 3754070, at *5 (D.N.J. Nov. 2, 2009) (collecting cases); *Adami v. Cardo Windows*, 299 F.R.D. 68, 80 (D.N.J. 2014) (declining to evaluate defendants' argument that plaintiffs differ from the proposed collective action because they worked less time and performed less work); *Depalma v. Scotts Co. LLC*, No. 13-7740, 2016 WL 7206151, at *3 (Mar. 31, 2016); *Goodman v. Burlington Coat Factory*, No. 11-4395, 2012 WL 5944000, at *6 (D.N.J. Nov. 20, 2012); *see also Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 749 (M.D. Tenn. 2018) (noting that "happy camper" declarations are "routinely given little or no weight at the conditional certification stage").  Moreover, as previously stated and in exercising of the Court's discretionary power to facilitate the sending of notice to potential collective, the Court assumes that the proposed collective include Super Cakes employees who, *inter alia*, (i) worked over forty hours in a workweek; and (ii) were not paid overtime compensation of (at least) one and one-half times the regular hourly rate for each hour worked beyond forty hours in a workweek.  This narrower definition sufficiently alleviates Defendants' concern that the potential collective members would

include employees who were not subject to the same allegedly illegal pay practice.  (*See* Def. Opp. Br. at 16).  In sum, the Court finds that Fuentes has met the modest factual showing necessary for conditional certification.[8]

## III.    CONCLUSION

For these reasons, the Court Grants Fuentes's motion for conditional certification under the FLSA and DENIES *without prejudice* Fuentes's motion for class certification under Rule 23. Because the Court finds that the parties' submissions are sufficient, the Court denies Defendants' request to file a sur-reply.  An appropriate Order accompanies this Opinion.


Dated:  December 9, 2020

                                                                                    *s/Esther Salas*
                                                                                    **Esther Salas, U.S.D.J.**

---

[8]    Because Fuentes and opt-in plaintiffs have satisfied the factual nexus standard, they necessarily satisfy the "substantial allegations" standard, which is a lower standard.